## EARL HERREN v. STATE.

No. A-7770.  Opinion Filed May 16, 1931.
(299 Pac. 234.)

J. Q. A. Harrod and Laynie W. Harrod, for plaintiff in error.

J. Berry King, Atty. Gen., and J. H. Lawson, Asst. Atty. Gen., for the State.

CHAPPELL, J.   Plaintiff in error, hereinafter called defendant, was convicted in the district court of Potta-

watomie county of the crime of grand larceny, and his punishment fixed by the jury at imprisonment in the state penitentiary for one year and one day.

As in most cases of this character, the evidence of the state is principally circumstantial. It was that Stuart Brothers were teaming contractors with a teaming camp in the neighborhood of St. Louis, in Pottawatomie county, and had a corral and buildings where they kept their live stock, harness, wagons, boomer chains, and boomers; the defendant lived something like a mile and a half from this camp and had a brother-in-law, Elzo Holley, who lived near the Stuart Brothers' corral; that William Holley, the father of Elzo Holley, jointly charged with this defendant, lived in McCurtain county; and that all the parties had formerly lived in McCurtain county.

That on the night the property was stolen, the defendant was seen in Stuart Brothers' corral at about 12 o'clock; that there was snow on the ground and on the wagon in the corral out of which boomers and boomer chains were taken; that the track of a man with a peculiar shoe heel was found in the snow in the wagon, and that this same track was found at defendant's car the next morning; that it was this peculiar shoe heel that gave the officers a clue to the perpetrators of the crime; that on the morning after the taking of the property the defendant and some one else were seen at Elzo Holley's place, near the corral, in the act of putting chains on the car, and when one of Stuart Brothers' men came in sight, they picked up the chains and placed them in the car and drove away; that some time later, defendant drove to McCurtain county and was there seen with boomer chains and boomers and lines similar to those that had been stolen from St. Louis; that later this property was located and taken by the officers and returned to Stuart

Brothers and later identified and introduced in evidence; that some time in July the bridles were found in the creek down in the community where the defendant was seen with the other stolen property; that these bridles on account of their peculiar make were identified as the property stolen from Stuart Brothers at the time of the alleged theft of the other property.

That at the time defendant was arrested he denied knowing anything about any of the property, but on the witness stand admitted that he did take two lines and a boomer and boomer chains down to McCurtain county, but claimed they had been given him by a relative in Pottawatomie county and that they were not stolen.

Defendant contends that this evidence is insufficient to support the verdict of the jury.

Under this assignment defendant insists that the witnesses for the state were not particular enough in identifying the property. It is sufficient to say that this character of property is hard to identify, but the identification was sufficient to establish that it was the property of Stuart Brothers and that it was stolen from their premises on the night the defendant was seen in the corral, and that this was the same property that the defendant had taken to McCurtain county.

This court has uniformly held that where there is any competent evidence in the record from which a jury could legitimately arrive at the conclusion that the appellant is guilty, a new trial will not be granted on the ground of the insufficiency of the evidence unless it be made to appear by the record that the jury was influenced by improper motives in convicting the appellant. Boucher v. State, 6 Okla. Cr. 387, 118 Pac. 1002, and many other cases of like import.

Defendant next contends that the court erred in admitting hearsay evidence.

Walter Brady, a witness for the defendant, had testified on direct examination that his wife was a relative of defendant and also testified to a state of facts that tended to establish the innocence of the defendant. On cross-examination he was asked if he did not tell Mr. Stacey, Mr. Gates, and Mr. Laird the next morning that he knew defendant and Holley had stolen the stuff the night before. These questions were evidently asked the witness for the purpose of impeachment and in order to show that he had made contrary statements on other occasions. The state thereupon called Stacey as a witness, who testified to the contrary statements having been made by the witness.

Defendant's counsel moved to strike this testimony and take it away from the jury as being incompetent, irrelevant, and immaterial and made in the absence of the defendant. The court overruled the motion, but instructed the jury that this evidence was not offered for the purpose of showing the guilt of the defendant, but was merely introduced for the purpose of impeaching the statement of the witness, in which he testified in chief that he did not go to the corral that night.

The state had a right to bring out the relationship of the witness to defendant and any previous statements he had made that tended to contradict the testimony he was then giving. Under the instructions of the court the jury could not have been misled by this evidence.

The court on its own motion gave the usual instructions on circumstantial evidence.

The record discloses that the defendant had a fair trial and the evidence fairly establishes his guilt.

For the reasons stated, the cause is affirmed.

EDWARDS, J., concurs. DAVENPORT, P. J., absent.